## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| **FREDRICK SCOLLAY** and **CAROLYN SCOLLAY**, | Case No. 1:22-cv-02798 |
| Plaintiffs, | |
| vs. | **JURY TRIAL DEMANDED** |
| **PHH MORTGAGE CORPORATION,** formerly known as Ocwen Loan Servicing, LLC, a wholly owned subsidiary of Ocwen Financial Corporation**,** | |
| Defendant. | |

## <u>COMPLAINT</u>

Plaintiffs, Fredrick Scollay and Carolyn Scollay ("Plaintiffs"), through counsel, for their complaint against PHH Mortgage Corporation ("PHH")**,** formerly known as Ocwen Loan Servicing, LLC, a wholly owned subsidiary of Ocwen Financial Corporation, state:

### NATURE OF THE CASE

1.      Plaintiffs encountered financial difficulty and fell behind on their home mortgage payments. In order to save their home, Plaintiffs sought to modify their loan and submitted a complete loss mitigation application to their servicer. Plaintiffs were approved for a Trial Payment Plan ("TPP"), which if completed would lead to a permanent loan modification. Plaintiffs accepted the TPP and made each of the required TPP payments. Plaintiffs performed their obligations under the TPP and were entitled to have their loan permanently modified; however, the Defendant failed to send the Plaintiffs a permanent modification.  Plaintiffs continued to make monthly payments in the amount called for in the TPP. Instead of helping them, and while continuing to accept their payments, the servicer canceled Plaintiffs' loss mitigation request, claiming Plaintiffs never signed

1

and returned the modification agreement that the servicer failed to send them. Plaintiffs were sued for foreclosure shortly thereafter; even then, Plaintiffs continued making TPP payments and the servicer continued accepting those payments. Plaintiffs were forced to retain counsel to seek information and to raise the errors in an attempt to have the servicer implement the modification they became entitled to upon completion of the TPP. When that did not happen, and instead the servicer continued to pursue a sale of the home in foreclosure, this action became necessary.

## PARTIES, JURISDICTION, AND VENUE

2.      Plaintiffs own the home at 29925 West Lakeview Avenue, Antioch, Illinois (the "Home").

3.      Plaintiffs are each natural persons who have lived in and maintained the Home as their primary, principal residence since purchasing the residence in 2004.

4.      In order to finance their purchase of the Home, on April 21, 2004, Plaintiffs borrowed money and executed a note in the amount of $174,000.00 payable to Ameriquest Mortgage, Inc. (the "Note"). To secure payment of that Note, Plaintiffs granted a contemporaneous mortgage lien on their Home (the "Mortgage"). The Note and Mortgage are collectively referred to herein as the "Loan."  A copy of the Loan is attached as *Exhibit 1*.  The Loan was modified by agreements made in 2010 and 2019.

5.      The owner and holder of the Loan is Deutsche Bank National Trust Company ("Deutsche Bank"), as trustee for Ameriquest Mortgage Backed Securities Inc. Asset-Backed Pass-through Certificates, Series 2004-R6.

6.      Defendant PHH services the Loan on Behalf of Deutsche Bank.

7.      PHH is a corporation organized under the laws of the state of New Jersey, with its principal place of business in New Jersey.

8.      PHH is a large mortgage servicer engaged in the servicing of thousands of consumer mortgage loans throughout the United States.

9.      PHH became the servicer of the Loan effective June 1, 2019. At that time, the Loan was alleged to be in default.

10.     Jurisdiction is conferred by 28 U.S.C. §1331 as this action arises under the Dodd-Frank Wall Street Reform and Consumer Protection Act ("DFA"), and the Real Estate Settlement Procedures Act, 12 U.S.C. §§2601, *et seq*. ("RESPA").

11.     This action is brought to enforce regulations promulgated by the Consumer Financial Protection Bureau ("CFPB") that became effective on January 10, 2014, specifically, 12 C.F.R. §§1024.35, 1024.36, and 1024.41 of Regulation X. Additionally, this action seeks relief pursuant to the FDCPA.

12.     Venue lies in this District pursuant to 28 U.S.C. §1391(b) as a substantial part of the events or omissions giving rise to the claims asserted herein occurred, or a substantial part of property that is the subject of the action, is in this District.

## SUMMARY OF CLAIMS

13.     In January 2013, the CFPB issued a number of final rules concerning mortgage markets in the United States, pursuant to the DFA, Public Law No. 111-203, 124 Stat. 1376 (2010).

14.     Specifically, on January 17, 2013, the CFPB issued RESPA (Regulation X) and TILA (Regulation Z) Mortgage Servicing Final Rules, 78 F.R. 10901 (February 14, 2013) and 78 F.R. 10695 (Regulation X) (February 14, 2013), which became effective on January 10, 2014.

15.     The Loan is a "federally related mortgage loan" as defined by 12 C.F.R. §1024.2(b).

3

16.     PHH is subject to these Regulations X and Z and does not qualify for an exception for "small servicers", as defined in 12 C.F.R. §1026.41(e)(4), nor the exemption for a "qualified lender", as defined in 12 C.F.R. §617.700.

17.     Plaintiffs assert claims for relief against PHH for violations of the specific rules set forth in Regulations X and Z.

18.     Plaintiffs assert a private right of action under RESPA pursuant to 12 U.S.C. §2605(f), and any such action provides for remedies including actual damages, costs, statutory damages, and attorneys' fees.

**LOAN LOSS MITIGATION AND FORECLOSURE**

19.     In 2019 Plaintiffs, like many Americans, encountered financial difficulties caused by reduction in income from reduced employment opportunities and serious health challenges. They fell behind in their Loan payments.

20.     On March 10, 2021, PHH notified Plaintiffs that they had been approved for a "PHH Mortgage Services Streamline Modification with monthly payments in the amount of $1,177.97." The TPP required three monthly payments of $1,177.97 commencing April 1, 2021. A true and correct copy of the TPP agreement is attached as ***Exhibit 2***.

21.     Plaintiffs accepted the TPP and timely made each of the three required monthly payments. All of these payments were received and accepted by PHH.

22.     Thereafter, PHH did not send the Plaintiffs an agreement to permanently modify the Loan as required by the TPP.

23.     Thereafter, Plaintiffs continued to send payments to PHH in the amount they believed was required, though they had received no agreement from PHH and had not been told to do so. Specifically, Plaintiffs sent:

- $1,180 on July 15, 2021;
- $1,180 on August 11, 2021;
- $1,180 on September 14, 2021;
- $1,180 on October 4, 2021;
- $1,180 on November 10, 2021;
- $1,180 on December 3, 2021;
- $1,180 on February 8, 2022.

24.     PHH received and accepted each of the payments made by Plaintiffs.

25.     Even though the Plaintiffs had accepted the TPP, made required payments which were received by PHH, and had thereafter made additional payments on July 15, 2021 and August 11, 2021, which were also received by PHH, the Loan was accelerated and declared to be in default by PHH.

26.     On August 30, 2021, PHH commenced a foreclosure case by causing a complaint to be filed on behalf of Deutsche Bank against Plaintiffs in the Circuit Court for the 19th Judicial Circuit, Lake County, Illinois. A copy of that complaint is attached as *Exhibit 3* and the case is referred to hereinafter as the "Foreclosure Case."

27.     In the Foreclosure Case, PHH asserted, falsely, that Plaintiffs were in default as of September 1, 2019.

28.     After the filing of the Foreclosure Case, Plaintiffs made five (5) additional payments, which were also received by PHH (*see* paragraph 23).

29.     On February 4, 2022, PHH sought a default judgment and judgment of foreclosure and sale in the Foreclosure Case, even though it had continued to accept payments from the Plaintiffs after that case was commenced.

30.     Fearing for the loss of their Home, Plaintiffs retained counsel to assist them in correcting the wrong inflicted upon them by PHH.

## PLAINTIFFS' ATTEMPTS TO OBTAIN INFORMATION
## AND HAVE PHH SERVICING ERRORS CORRECTED

31.     On January 12, 2022, Plaintiffs sent PHH a qualified written request for information ("RFI"). In this RFI, Plaintiffs sought information concerning the servicing of their Loan, including, among other things, a life of loan transaction history, servicing notes, mortgage statements, notices of default or acceleration, any foreclosure notices and filings, recent escrow analysis, a reinstatement quote and a payoff quote. A true and correct copy of this RFI is attached as *Exhibit 4* and referenced hereinafter as "RFI #1."

32.     Also on January 12, 2022, Plaintiffs sent PHH a RFI which sought information and communications related to loss mitigation with respect to the Plaintiffs and the Loan, including, among other things, correspondence and communications regarding loss mitigation, as well as copies of any trial period plans, loan modification agreements, loss mitigation agreements or temporary forbearance plans or agreements offered to Plaintiffs. A true and correct copy of this RFI is attached as *Exhibit 5* and referenced hereinafter as "RFI #2."

33.     PHH received RFI #1 and RFI #2 at the address designated for receipt of such notices.

34.     By letter dated January 27, 2022, PHH sent its "Response Letter for Your Recent Request," a copy of which (*without attachments to the Response*) is attached as *Exhibit 6* and referenced hereinafter as "RFI Response."

35.     In the RFI Response, PHH provided Plaintiff with certain loan documents and some of the information requested by RFI #1 and RFI #2, however, the response was materially incomplete and failed to provide all of the information specifically requested by Plaintiffs.

36.     Importantly, PHH's RFI Response did not attach any loan modification agreement that was allegedly sent to borrowers following the March 10, 2021 TPP.

37.     On March 15, 2022, Plaintiffs sent PHH a notice of error ("NOE") pursuant to 12 C.F.R. § 1024.35 regarding PHH's failure to properly and fully respond to RFI #1 and RFI #2. A copy of this NOE is attached as ***Exhibit 7***.

38.     PHH received the NOE at the address designated for receipt of such notices.

39.     In the NOE, Plaintiffs raised the following multiple errors.

**Error #1**

40.     PHH failed and refused to produce any servicing notes related to its servicing of the Borrowers' mortgage loan. PHH did not explicitly state a justification for this failure, but provided the following general justification for all its failures to respond fully to the RFIs: "Some of the information you requested has not been provided because production would create an undue burden on us. If you would like to narrow the timeframe or types of documents you are requesting, we can reconsider."

41.     PHH acquired servicing rights for this Loan on June 1, 2019, according to the "RESPA Hello/Goodbye Letter" that was included in PHH's RFI Response. Therefore, Borrowers were only requesting the servicing notes from June 1, 2019 to the present. It cannot be claimed that simply providing the notes from PHH's servicing system of record for a period of time totaling 31 months as of the time of the request is unduly burdensome.

42.     Furthermore, to the extent that PHH withheld the servicing notes based on a claim that they are proprietary, this is also not a well-founded objection. The Commentary to 12 C.F.R. § 1024.36(f)(1)(ii) sets forth examples of what is considered confidential, "proprietary" or privileged under the regulation, as follows: (i) Information regarding management or profitability of a servicer, including information provided to investors in the servicer; (ii) Compensation, bonuses, or personnel actions relating to servicer personnel, including personnel responsible for

7

servicing a borrower's mortgage loan account; (iii) Records of examination reports, compliance audits, borrower complaints, and internal investigations or external investigations; or (iv) Information protected by the attorney-client privilege.

43.     12 C.F.R. § 1024.38(c)(2) further directs that "[U]pon receipt of a borrower's request for a servicing file, a servicer shall provide the borrower with a copy of the information contained in the servicing file for the borrower's mortgage loan, subject to the procedures and limitations set forth in § 1024.36."

44.     The servicing notes related to PHH's servicing of the Plaintiffs' Loan were not proprietary information, nor would their production be overly burdensome. PHH's failure and refusal to produce the servicing notes is a defined error as set forth in 12 C.F.R. § 1024.35(b)(11).

**Error #2**

45.     Second, PHH failed and refused to produce copies of all monthly mortgage statements sent to the Plaintiffs from the date it began servicing the Loan, June 1, 2019, to the present. PHH only provided three mortgage statements: November 1, 2021, January 1, 2022 and February 1, 2022. Here again, PHH did not explicitly justify this failure; it presumably is relying upon the same general justification of undue burden.

46.     The Plaintiffs requested only 31 months of mortgage statements that PHH sent to the Plaintiffs. This is not an "unduly burdensome" request. Furthermore, as stated below, the Plaintiffs believe that PHH has (1) assessed or imposed one or more fees or charges to the Loan where PHH, as servicer, lacks a reasonable basis to impose such a fee or charge or where such a fee or charge is not permitted by applicable law; (2) failed to provide accurate information to a borrower for loss mitigation options and foreclosure, as required by the early intervention provisions of § 1024.39; (3) made the first notice or filing required by applicable law for any

judicial or non-judicial foreclosure process in violation of the loss mitigation procedures of §
1024.41(f) or (j); and (4) moved for foreclosure judgment or order of sale, or conducting a
foreclosure sale in violation of the loss mitigation procedures of this rule § 1024.41(g) or (j).

47.     The monthly statements are necessary to identify payments fees assessed or
imposed. If PHH did <u>not</u> send monthly mortgage statements to the Plaintiffs for the months of June
2019 through October 2021, that response should have been given.

48.     PHH's failure and refusal to produce all monthly mortgage statements from June
2019 to the present is a defined error as set forth in 12 C.F.R. § 1024.35(b)(11).

**Error #3**

49.     As explained above, PHH accelerated the Loan and filed for foreclosure when the
Plaintiffs had  performed under a Trial Period Plan in violation of Regulation X. Plaintiffs were
wrongly assessed fees attendant to those failures. Therefore, PHH could not and has not provided
Plaintiffs with an accurate and up-to-date reinstatement quote.

50.     PHH's failure to provide an accurate and up-to-date reinstatement quote is a defined
error as set forth in 12 C.F.R. § 1024.35(b)(11).

**Errors #4 and #5**

51.     By letter dated March 10, 2021, PHH offered the Plaintiffs a TPP that called for
acceptance and payment by April 1, 2021. Plaintiffs accepted and signed the TPP acceptance on
March 17, 2021 and returned it to PHH.

52.     PHH's failure to provide a copy of the TPP it offered Plaintiffs dated March 10,
2021 is a covered error as set forth in 12 C.F.R. § 1024.35(b)(11).

53.     PHH's failure to provide the proof of mailing of the TPP it offered Plaintiffs dated
March 10, 2021 is a covered error as set forth in 12 C.F.R. § 1024.35(b)(11).

**Errors #6 and #7**

54.     The TPP called for three trial payments each in the amount of $1,177.97 to be made on April 1, 2021, May 1, 2021 and June 1, 2021. Plaintiffs made each of those three trial payments by paying them to PHH in the months they were due, as follows:

- $1,180 on March 31, 2021;
- $1,180 on May 1, 2021;
- $1,180 on June 4, 2021.

All of these payments were received and accepted by PHH. PHH failed to send Borrowers a final modification agreement after they made the above required three payments. All of these additional payments were received and accepted by PHH. PHH's failure to send Plaintiffs a permanent modification agreement after their completion of the TPP is a defined error as set forth in 12 C.F.R. § 1024.35(b)(11).

55.     Thereafter, Borrowers made the following additional trial payments to PHH:

- $1,180 on July 15, 2021;
- $1,180 on August 11, 2021;
- $1,180 on September 14, 2021;
- $1,180 on October 4, 2021;
- $1,180 on November 10, 2021;
- $1,180 on December 3, 2021;
- $1,180 on February 8, 2022.

All of these payments were received and accepted by PHH. PHH failed to send Plaintiffs a final modification agreement after they made the above payments. PHH's failure to send Plaintiffs a permanent modification agreement after their completion of the TPP is a defined error as set forth in 12 C.F.R. § 1024.35(b)(11).

**Error #8**

56.     Despite the fact that Plaintiffs performed their obligations under a TPP and had become entitled to a permanent modification of their Loan after their July 15, 2021 TPP payment was received and accepted by PHH, PHH filed the Foreclosure Case against them on August 31, 2021.

57.     This is an error pursuant to 12 C.F.R. § 1024.35(b)(9) and § 1024.41(f).

**Error #9**

58.     On February 4, 2022, PHH moved for default judgment and judgment of foreclosure and sale against the Plaintiffs in the Foreclosure Case. As the Borrowers had already performed and made all required and seven additional TPP payments, they were in active loss mitigation at the time PHH moved for the entry of judgment.

59.     This is an error pursuant to 12 C.F.R. § 1024.35(b)(10) and § 1024.41(g).

**Error #10**

60.     The Payoff Letter, Reinstatement Letter and Transaction History that PHH provided in its January 27, 2022 RFI Response discloses that PHH has imposed various late fees, delinquent property management fees and foreclosure related costs and fees to the Plaintiffs' Loan, despite that they performed their obligations under the TPP and were entitled to have their loan permanently modified after their July 2021 TPP payment. These fees include late fees when the Plaintiffs were not late, delinquent property management fees when the Plaintiffs were not in a delinquency status, and foreclosure related costs and fees for a foreclosure lawsuit that was filed and advanced in violation of law.

61.     By and through the NOE, Plaintiffs requested that PHH correct the ten (10) servicing errors noted by immediately dismissing the Foreclosure Case, auditing the Loan account

and remove all late fees, attorney fees, property inspection fees and any other foreclosure, default or delinquency related charges or fees added after March 31, 2021; properly credit all trial period payments made from March 31, 2021 through the present toward the Loan's principal balance; after removing the fees and charges, and crediting all payments made, capitalize the balance then due on the Loan and create a permanent modification agreement with a first payment due no earlier than 30 days from the date the modification is created, with a loan term and interest rate that is acceptable under the guidelines of the Loan's investor, and email and mail the agreement to the attention of Plaintiffs' counsel.

62.     By letter dated April 15, 2022, PHH sent Plaintiffs a response to the NOE ("NOE Response") which purported to respond to the Plaintiffs' NOE. A copy of the NOE Response (*without attachments*) is attached as ***Exhibit 8***.

63.     In its NOE Response PHH communicates its position that no servicing errors have occurred with respect to Plaintiffs' Loan, yet PHH did not directly respond to each of the ten (10) specific errors raised by Plaintiffs in the NOE. Instead, PHH chose to regurgitate information previously provided, provided boilerplate responses and supplied information, which was either not requested, not relevant and was instead wholly nonresponsive to the errors raised.

64.     Most significantly, PHH did not provide Plaintiffs with a copy of any permanent loan modification allegedly sent to Plaintiffs subsequent to their completion of the TPP or provide Plaintiffs with justification for continuing the Foreclosure Case while simultaneously receiving payments from the Plaintiffs.

65.     Moreover, the NOE Response is replete with false statements. Specifically, PHH falsely states the amount required to reinstate their properly applied the Plaintiffs' payments, falsely states the fees and charges which it posted to the Plaintiffs' Loan account were proper,

falsely states that the Loan is due for December 1, 2019, falsely states that a permanent modification agreement was sent to Plaintiffs (while not attaching the same to its response), and falsely states Plaintiffs failed to return an agreement that had never actually been sent to them.

66. Inexplicably, PHH has continued to move forward in the Foreclosure Case despite pending loss mitigation, performance by the Plaintiffs of the TPP and acceptance by PHH of Plaintiffs' payment after the TPP and while simultaneously pursuing foreclosure and sale of Plaintiffs' Home.

## IMPACT ON AND DAMAGE TO PLAINTIFFS

67. Plaintiffs reached out to PHH for help in 2021 when they encountered financial difficulty. Since that time, the Plaintiffs have endeavored to modify their Loan and have diligently provided PHH with acceptance of the TPP, payment of the required three payments and continued good faith payments thereafter.

68. The Plaintiffs expected that PHH would send them a permanent modification agreement following their complete performance of the TPP. Instead, PHH filed the Foreclosure Case and sought a judgment of foreclosure and sale of their Home.

69. Instead of being treated fairly as a customer should be, they were met with callous indifference and a misguided determination on the part of PHH to steamroll the foreclosure through to sale.

70. The Plaintiffs had to employ counsel to represent their interest in the Foreclosure Case and to prepare the NOE.

71. The impact of PHH's conduct on Plaintiffs has been severe - emotionally and financially.

72.     Plaintiffs have endured severe emotional distress directly and  proximately caused by the conduct of PHH. This stress is driven by the daily ongoing fear that they might lose their Home in foreclosure and be forced to leave their Home. This stress and fear has resulted in loss of sleep, anxiety, depression, embarrassment, and other significant and persistent emotional distress.

73.     The actions of PHH have further caused Plaintiffs to remain unnecessarily in a default status on the Loan and remain in foreclosure for a significantly longer time than they would have if PHH had acted appropriately and with reasonable diligence in handling the modification and in resolving the errors alleged, which has caused continued damage to their credit and an unnecessary delay to Plaintiffs' rehabilitation of their credit.

74.     The actions of PHH have caused Plaintiffs to incur actual damages including time off work, travel expenses to and from their attorney's office, filing fees, attorneys' fees to defend the Foreclosure Case and to seek stays in that case, costs, and expenses for the investigation and preparation of the NOE, the review of any response made by PHH, and the preparation and prosecution of this action.

75.     Throughout this entire ordeal, the Plaintiffs have merely wanted to save their Home. They have repeatedly asked PHH to just fix the errors alleged, provide them with the promised loan modification, and cease its efforts to sell the Home. PHH has steadfastly failed and refused to do so.

76.     PHH has engaged in a pattern and practice of mistreating mortgage loan borrowers and violating provisions of the Real Estate Settlement Procedure Act, 12 U.S.C. §§2605, 2617, and the regulations promulgated thereunder at Regulation X, 12 C.F.R. part 1024  ("RESPA"). As set forth, infra, Plaintiffs have alleged not less than ten (10) violations which demonstrates said pattern and practice.

14

77.     PHH is the successor in interest to Ocwen Mortgage. PHH has continued to service consumer loans in a manner which results in widespread consumer harm. PHH fails to maintain proper policies and procedures and to train and educate its employees in a manner that does not result in consumer harm. PHH has been placed on notice by its regulators that it must change its practices. It has not. PHH is a recidivist which must be held to account for its abusive and deceitful conduct.

## COUNT ONE

### Violation of 12 C.F.R. §1024.35(e)

### [PHH's Failure to Properly Respond to Multiple Errors in Violation of 12 C.F.R. §1024.35]

78.     Plaintiffs restate and incorporate all of their statements and allegations contained in paragraphs 1 through 77 in their entirety, as if fully rewritten herein.

79.     12 C.F.R. §1024.35(e)(1) provides that a servicer must respond to a notice of error by either correcting the error or errors identified by the borrower and providing the borrower with a written notification of the correction, the effective date of the correction, and contact information, including a telephone number, for further assistance" or conducting a reasonable investigation and providing the borrower with a written notification that includes a statement that the servicer has determined that no error occurred, a statement of the reason or reasons for this determination, a statement of the borrower's right to request documents relied upon by the servicer in reaching its determination, information regarding how the borrower can request such documents, and contact information, including a telephone number, for further assistance."

80.     Plaintiffs have asserted ten (10) specific servicing errors in the NOE.

81.     PHH failed to reasonably investigate and respond to the alleged errors contained in the NOE and instead sent responses which indicated that it had not conducted any reasonable

investigation and provided information which was either false or which contradicted its own prior statements.

82.     Any reasonable investigation into the errors alleged would reveal that PHH failed to act with due diligence in implementing the modification and improperly sought to foreclose and sell the Plaintiffs' Home when loss mitigation was pending.

83.     PHH's actions, in failing to conduct a reasonable investigation of the errors alleged constitute clear and material violations of 12 C.F.R. §1024.35(e).

84.     PHH's actions are believed to be a pattern and practice of behavior in conscious disregard for Plaintiffs' rights.

85.     As a result of PHH's actions, PHH is liable to Plaintiffs' for actual damages, as described, *supra*, as well as for statutory damages, costs, and attorneys' fees.

**WHEREFORE,** the Plaintiffs pray for the entry of judgment in their favor and against PHH, as follows:

A.  For actual damages, all costs and reasonable attorney fees;

B.  For statutory damages of Two Thousand Dollars ($2,000.00) per Plaintiff for each and every violation contained in Count One; and

C.  For all other relief this Court may deem just and proper.

<u>COUNT TWO</u>

**Violation of 12 C.F.R. § 1024.41(g)**

**[PHH's Dual Tracking]**

86.     Plaintiffs restate and incorporate all of their statements and allegations contained in paragraphs 1 through 77 in their entirety, as if fully rewritten herein.

87.     12 C.F.R. § 1024.41(a) explicitly provides that "[a] borrower may enforce the

16

provisions of this section pursuant to section 6(f) of RESPA (12 U.S.C. §2605(f))".

88.     12 C.F.R. § 1024.41(g) provides that if a borrower submits a complete loss mitigation application after a servicer has made the first notice or filing required by applicable law for any judicial or non-judicial foreclosure process but more than 37 days before a foreclosure sale, a servicer shall not move for foreclosure judgment or order of sale, or conduct a foreclosure sale, unless: (1) The servicer has sent the borrower a notice pursuant to paragraph (c)(1)(ii) of this section that the borrower is not eligible for any loss mitigation option and the appeal process in paragraph (h) of this section is not applicable, the borrower has not requested an appeal within the applicable time period for requesting an appeal, or the borrower's appeal has been denied; (2) The borrower rejects all loss mitigation options offered by the servicer; or (3) The borrower fails to perform under an agreement on a loss mitigation option."

89.     Comment 1 of the Official Interpretations of the CFPB to 12 C.F.R. § 1024.41(g) provides that the prohibition on a servicer moving for judgment or order of sale includes making a dispositive motion for foreclosure judgment, such as a motion for default judgment, judgment on the pleadings, or summary judgment, which may directly result in a judgment of foreclosure or order of sale. A servicer that has made any such motion before receiving a complete loss mitigation application has not moved for a foreclosure judgment or order of sale if the servicer takes reasonable steps to avoid a ruling on such motion or issuance of such order prior to completing the procedures required by § 1024.41, notwithstanding whether any such action successfully avoids a ruling on a dispositive motion or issuance of an order of sale."

90.     PHH's actions in moving toward the sale of the Home while a loss mitigation application - the pending permanent modification of their Loan - was pending constitutes a clear and egregious violation of 12 C.F.R. § 1024.41(g).

91.     PHH's actions are part of a pattern and practice of behavior in conscious disregard for the rights of Plaintiffs.

92.     In addition to the damages outlined, *supra*, PHH's violation of 12 C.F.R. § 1024.41(g) directly and proximately caused Plaintiffs to incur actual damages including but not limited to attorneys' fees in retaining counsel to attempt to stay the sale of the Home.

93.     PHH is liable to Plaintiffs for actual damages, statutory damages, costs, and attorneys' fees.

**WHEREFORE,** the Plaintiffs pray for the entry of judgment in their favor and against PHH, as follows:

A.  For actual damages, all costs and reasonable attorney fees;

B.  For statutory damages of Two Thousand Dollars ($2,000.00) per Plaintiff for each and every violation contained in Count Two; and

C.  For all other relief this Court may deem just and proper.

## COUNT III

**Violation of Illinois Consumer Fraud and Deceptive Business Practices Act**

94.     Plaintiffs restate and incorporate all of their statements and allegations contained in paragraphs 1 through 93 in their entirety, as if fully rewritten herein.

95.     The Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505 *et seq.* (the "Act" or "ICFA"), is intended to protect consumers against unfair or deceptive acts and fraud in conduct of trade or commerce.

96.     The ICFA provides:

> Unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with

18

intent that others rely upon the concealment, suppression or omission of such material fact, or the use or employment of any practice described in Section 2 of the "Uniform Deceptive Trade Practices Act,". . . in the conduct of any trade or commerce are hereby declared unlawful whether any person has in fact been misled, deceived or damaged thereby.

97.    Plaintiffs are "persons" as defined by 815 ILCS 505/1(c).

98.    Plaintiffs are "consumers" as defined by 815 ILCS 505/1(f).

99.    PHH is engaged in "commerce" as defined by 815 ILCS 505/1(f).

100.    PHH engaged in unfair and deceptive acts in its dealings with Plaintiffs.

101.    Plaintiffs may predicate an ICFA unfairness claim on violations of other statutes or regulations, even those that themselves do not allow for private enforcement.

102.    With respect to unfairness, PHH was obligated under RESPA to provide the following to consumers for all the loans it serviced:

    a.   Accurate and complete account information;

    b.   Complete and accurate investigation of alleged errors or inaccuracies;

    c.   Prompt remediation of errors and inaccuracies;

    d.   Adequate staffing for its loss mitigation department;

    e.   Adequate training for its foreclosure and loss mitigation staff;

    f.   Proper, truthful and accurate communications including regarding loss mitigation and loan modification efforts;

    g.   Accurate and prompt processing of loss mitigation and loan modifications;

    h.   Prompt posting of payments, including trial modification payments;

    i.   Adequate infrastructure and effective personnel to provide basic mortgage servicing systems that did not harm consumers;

    j.   Accurate final modifications agreements timely upon borrowers' completion of

a TPP; and

k. Loss mitigation review and implementation without simultaneously progressing a foreclosure case toward judgment and sale.

103. PHH failed to provide any of these things for Plaintiffs.

104. While servicing Plaintiffs' Loan, PHH breached the RESPA and ICFA.

105. With regard to deception, PHH engaged in each of the following deceptive acts, with the full intent that Plaintiffs rely upon them:

a. PHH represented to Plaintiffs that their loan would be modified if they made the payments called for under the TPP;

b. PHH represented to Plaintiffs that their loan would be modified after they made three payments under the TPP;

c. PHH failed to disclose to Plaintiffs that it would commence foreclosure and resume collection after they had performed under the TPP; and

d. PHH failed to disclose to Plaintiffs that it would not permanently modify their loan if they performed under the TPP.

106. PHH intended that Plaintiffs rely upon its deception.

107. As a direct and proximate result of PHH's unfair and deceptive acts, materially false statements and omissions, Plaintiff has suffered damages as detailed herein above.

108. PHH seeks such economic and non-economic damages as a jury deems reasonable and may award after hearing the evidence in this case.

109. Plaintiffs also seek an award of punitive damages commensurate with the massive consumer harm inflicted by PHH on Plaintiffs and the thousands of other consumers needlessly harmed by PHH. Plaintiffs also request that the Court award her statutory attorneys' fees and the

20

costs of the litigation.

**WHEREFORE**, Plaintiffs requests the Court enter judgment in her favor against the Defendant as follows:

A. Declaring that the conduct of PHH as alleged herein is unlawful and violates the ICFA, 815 ILCS 505 *et seq.*;

B. Awarding actual damages in an amount to be proved at trial, punitive damages, costs of this action including expenses, together with reasonable attorney's fees as determined by this Court; and

C. Awarding all other relief this Court deems just and equitable.

## JURY DEMAND

Plaintiffs, Fredrick Scollay and Carolyn Scollay, hereby respectfully demand a trial by jury on all such claims that may be so tried.

*Respectfully submitted,*

*/s/ Rusty A. Payton*
Rusty A. Payton,
PAYTON LEGAL GROUP, LLC
20 North Clark Street, Suite 3300
Chicago, Illinois 60602
(773) 682-5210
info@payton.legal

Nick Wooten
NICK WOOTEN, LLC
5125 Burnt Pine Drive
Conway, Arkansas 72034
(833) 937-6389
nick@nickwooten.com

Adam J. Feuer
LAW OFFICES OF ADAM J. FEUER, LLC
2846A North Milwaukee Avenue
Chicago, Illinois 60618
(847) 918-4200
afeuer@cca-firm.com


*Counsel for Plaintiffs*